**EXHIBIT 5**

**SALE NOTICE**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

In re:

American Bancorporation,   Bky. Case No. 14-31882 (KAC)

Debtor.   Chapter 11

## NOTICE OF SALE AND SALE PROCEDURES

To: The United States Trustee, all Creditors and Equity Security Holders, and Other Parties-In-Interest:

**Notice:** On **December 11, 2014, at 2:00 p.m. (CDT)** in Courtroom 2C, 2nd Floor, United States Courthouse, 316 N. Robert Street, St. Paul, Minnesota, American Bancorporation will ask the Court to approve a sale of substantially all of the Debtor's assets free and clear of all liens, claims, encumbrances and interests (collectively, the "Liens"), with all such Liens to attach to the sale proceeds (the "Sale Hearing"). The Sale Hearing may be continued from time to time without further notice.

The Assets being sold include substantially all of the Debtor's Assets, including without limitation the issued and outstanding shares of capital stock (the "Bank Shares") of American Bank of St. Paul owned by the Debtor which includes all operations and assets of the Bank, including the Bank's sole ownership interest in AmeriNational Community Services, Inc. ("ACS"). The Bank Shares will be sold pursuant to Sale Procedures substantially similar to those procedures submitted to the Court for approval at the hearing scheduled for **October 29, 2014 at 2:00 p.m. (CDT)**. The Sale Procedures contemplate the sale of the Bank Shares to Deerwood Bank (the "Stalking-Horse Bidder") or such other higher or otherwise better bidder(s) at the conclusion of the Auction.

The Debtor and the Stalking-Horse Bidder have entered into alternative stock purchase agreements (the "Purchase Agreements") whereby the Stalking-Horse Bidder has agreed to purchase under the sale process proposed either (i) all of the Bank Shares, which includes all operations and assets of the Bank *including* the Bank's sole ownership of ACS (the "Stalking-Horse Agreement"), or (ii) if the Debtor, in its sole and absolute discretion, makes an election to proceed with a sale transaction pursuant to the terms of an alternative stock purchase agreement with the Stalking-Horse Bidder (the "Alternative Transaction Agreement"), the Stalking-Horse Bidder has agreed to purchase the Bank Shares which includes all of the operations and assets of the Bank *excluding* the Bank's sole ownership interest in ACS, which will be available for sale to

another Qualified Bidder at the Auction separately from the Bank Shares. Each of the Purchase Agreements with the Stalking-Horse Bidder is subject to higher and otherwise better offers, but only one of the Purchase Agreements between the Debtor and the Stalking-Horse Bidder would become effective.

The proposed Sale Procedures set the following deadlines:

| | |
|---|---|
| Final Bids (received by) | December 3, 2014 by 5:00 p.m. (prevailing Central Time) |
| Auction | December 9, 2014 at 9:00 a.m. (prevailing Central Time) |
| Final Hearing to Approve Sale | December 11, 2014 at 2:00 p.m. (prevailing Central Time) |

If no better bid is obtained, the Debtor will sell the Bank Shares to the Stalking-Horse Bidder pursuant to the Purchase Agreements on file with the Court. The basic terms of Purchase Agreements are summarized as follows (with all capitalized terms not defined herein having those meanings set forth in the Stalking-Horse Agreement):

| | |
|---|---|
| **Purchase Price for the Stalking-Horse Agreement:** | For the Bank Shares, including all operations and assets of the Bank *including* the Bank's sole ownership of ACS, purchase price in cash equal to (1) the product of (A) 65%, multiplied by (B) the "Adjusted Book Value" of the Bank as of the "Determination Date," minus (2) the "Loan Loss Reserve Adjustment" (as such terms are defined in the Stalking-Horse Agreement). A sample calculation of the Purchase Price using the Bank's Call Report dated June 30, 2014 and such date as the Determination Date, the resulting purchase price payable to the bankruptcy estate would have been $15,756,925 (the "Purchase Price"). |
| **Purchase Price for Alternative Transaction Agreement**: | For the Bank Shares, including all operations and assets of the Bank *excluding* the Bank's sole ownership interest in ACS a purchase price in cash equal to (1) the product of (A) 41.4%, multiplied by (B) the Adjusted Book Value of the Bank as of the Determination Date, minus (2) the Loan Loss Reserve Adjustment. A sample calculation of the Purchase Price using the Bank's Call Report dated June 30, 2014 and such date as the Determination Date, the resulting purchase price payable to the bankruptcy estate would have been $10,000,000 ("Alternative Purchase Price"), which includes a capital requirement equivalent to the book value associated with ACS, equivalent to $9,692,081 as of June 30, 2014, *provided, however*, that the Bank Subsidiary Shares would be available for sale to third parties under the Alternative |

2

|  |  |
|---|---|
|  | Transaction Agreement and that any amount paid for the Bank Subsidiary Shares above the book value associated with ACS would be delivered to the Debtor by either dividend or in the form of an increase in the Alternative Purchase Price. |
| **Sale Election:** | The Debtor and the Stalking-Horse Bidder have agreed that the Debtor shall have the absolute right, power and privilege to make an election to proceed with the Sale transaction pursuant to the Stalking-Horse Agreement or the Sale transaction pursuant to the Alternative Transaction Agreement.  The Sale Election may be exercised by notice (which may be oral or written) at any time, and from time to time, before the conclusion of the Auction, or if not Auction, at the Sale Hearing unless otherwise agreed by the parties. Only one of the Purchase Agreements between the Stalking-Horse Bidder and the Debtor would, however, become effective. |
| **Deposit:** | Cash in the amount of $250,000 has been deposited as earnest money to Debtor's counsel and will be held in a non-interest bearing account until the Sale. |
| **Acquired Assets:** | All of the Debtor's right, title and interest in, to and under the Bank Shares, free and clear of all liens, claims and encumbrances, consisting of all of the properties, assets, and rights of the Debtor related to the Bank and its Business, including, without limitation (unless a Sale Election is made by the Debtor and an Alternative Transaction Agreement is effective), all right title and interest of the Bank in the issued and outstanding shares of capital stock of ACS. |
| **Representations:** | The parties have each made representations and warranties that are customary in connection with transactions of this size and nature. |
| **Closing:** | The consummation of the transactions contemplated by the Purchase Agreements shall occur following the satisfaction or waiver by the appropriate party of the conditions specified in <u>Article 7</u> of the Purchase Agreements no later than February 28, 2015. |
| **Closing Conditions:** | Closing is subject to certain conditions, including (i) the continued accuracy of representations and warranties, (ii) the performance by Debtor in all material respects of its |

3

|  |  |
|---|---|
|  | obligations under the Purchase Agreements, (iii) the entry of the Orders by the Bankruptcy Court relating to the sale of the Bank Shares, (iv) obtaining necessary regulatory approvals, and (v) the absence of a Material Adverse Effect. |
| **Stalking-Horse Bidder Fees:** | In the event the Stalking-Horse Bidder is not the Successful Bidder under either the Stalking-Horse Agreement or the Alternative Transaction Agreement and the Debtor closes on the Sale contemplated by such agreements with another bidder or bidders, the Stalking-Horse Bidder will be entitled to receive a fee from the proceeds received in connection with such Sale in the amount of $450,000 and the Expense Reimbursement described below. |
| **ACS Stalking-Horse Bidder Fee:** | In the event that the Stalking-Horse Bidder is not the Successful Bidder under the Stalking-Horse Agreement and the Stalking-Horse Bidder has consummated the Alternative Transaction, the Stalking-Horse Bidder will be entitled to receive a fee in the amount of $350,000, but would not be entitled to receive any Expense Reimbursement. |
| **Expense Reimbursement:** | In the event the Stalking Horse Bidder is not the Successful Bidder under either the Stalking-Horse Agreement or the Alternative Transaction Agreement, the Stalking-Horse Bidder will be entitled to reimbursement of up to $250,000 of actual, documented and reasonable expenses and costs (including the negotiations, due diligence and bidding process) incurred in connection with the transactions contemplated by the Stalking-Horse Agreement. |
| **Payment:** | Any amount that may be due and payable by the Debtor with respect to the Stalking-Horse Bidder Fee and Expense Reimbursement, or with respect to the ACS Stalking-Horse Bidder Fee, will be paid from the proceeds received from the Sale(s) to another Successful Bidder(s). If more than one Successful Bidder prevails, the Stalking-Horse Bidder Fee shall paid as follows: $350,000 shall be paid by the Successful Bidder of the Bank Shares, excluding the Bank Subsidiary Shares, and $100,000 shall be paid by the Successful Bidder of the Bank Subsidiary Shares. The Expense Reimbursement, under such circumstances, would be divided by two and paid by the two Successful Bidders. |
| **Termination:** | The Purchase Agreements list customary termination provisions, including the right of the Stalking-Horse Bidder |

4

to terminate in the event that the Sale Order approving the Sale to the Stalking-Horse Bidder is not entered on or before 60 calendar days after the date of the Sale Procedures Order, and that the Closing shall not have occurred by February 28, 2015, unless otherwise extended as otherwise provided in the Purchase Agreements. Either the Company or the Buyer may terminate the Purchase Agreements upon written notice from a Governmental Authority that it will not grant any of the Buyer Required Approvals or that the agreement violates any applicable Legal Requirement. The termination of the Purchase Agreements will, under certain circumstances, entitle the Stalking-Horse Bidder to a Stalking-Horse Bidder Fee and Expense Reimbursement or the ACS Stalking-Horse Bidder Fee.

The Debtor will give separate notice of any unexpired leases and executory contracts to be assumed and assigned by the Stalking-Horse or potentially by another bidder(s), with cure amounts and, and will identify the assignee as promptly as possible after the Auction, if any.

**Objections to the relief to be requested at the Sale hearings must be served on the parties below and must also be served and filed in accordance with Local Rule 9006-1(c)**. Any responsive documents shall be filed and served by mail or delivery not later than **December 6, 2014**, which is five (5) days (including Saturdays, Sundays, and legal holidays), before the time set for the hearing, except that (a) objections to the sale based on events following such deadline, and (b) objections based on changes concerning assumption and assignment of unexpired leases or executory contracts where the objecting party received less than fourteen (14) days notice of the change or (c) objections to assumption and assignment based on the requirement of "adequate assurance of future performance" by the Stalking- Horse or other assignee may be served so as to be received and filed not later than 12:00 p.m. (prevailing Central Time) on December 10, 2014.

| **Debtor's Counsel:** | **Prospective Buyer's Counsel:** | **United States Trustee:** |
|---|---|---|
| George H. Singer, Esq.<br>Jeffrey D. Smith, Esq.<br>Lindquist & Vennum LLP<br>4200 IDS Center<br>Minneapolis, MN 55402<br>(612)371-3211<br>Fax: (612)371-3207 | Adam Maier, Esq.<br>Stinson Leonard Street LLP<br>150 South Fifth Street, Ste. 2300<br>Minneapolis, MN 55402<br>(612) 335-1412<br>Fax: (612) 335-1657 | Colin Kreuziger, Esq.<br>US. Trustee's Office<br>1015 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415<br>(612) 335-1350<br>Fax (612) 335-4032 |

5

**Financial Advisor to Debtor:**

Evan Tomaskovic
Carl Marks Securities LLC.
900 Third Avenue, 33rd Flr.
New York, NY 10022
(212) 909-8458
Fax (212) 752-9753

**Any objector must also appear at the Sale Hearing.**

**Copies of the Debtor's motion, including the Purchase Agreements, the proposed Sale Procedures and the proposed order approving the Sale Procedures are available on the Court's web site at www.mnb.uscourts.gov or from Debtor's counsel upon request.** Additional information may be obtained on request from the Debtor's counsel.

| | |
|---|---|
| Date: October 21, 2014 | George H. Singer, Esq. |
| | Jeffrey D. Smith, Esq. |
| | Lindquist & Vennum LLP |
| | 4200 IDS Center |
| | 80 South Eighth Street |
| | Minneapolis, MN 55402 |
| | (612)371-3211 |
| | Fax: (612)371-3207 |
| | Attorneys for American Bancorporation |

1