UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

American Bancorporation,                                  Chapter 11

        Debtor.                                Bky. Case No. 14-31882 (KAC)

**ORDER AUTHORIZING AND APPROVING SALE OF CERTAIN ASSETS FREE
AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

This matter came before the Court on the verified Motion of American Bancorporation (the "Debtor") for Entry of (I) an Order (A) Approving Sale and Auction Procedures; (B) Approving Bidding Protections for Stalking-Horse Bidder; (C) Approving Procedures Related to Assumption and Assignment of Executory Contracts; and (D) Approving Form and Manner of Notice; and (II) an Order (A) Authorizing Sale of Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (B) Granting Related Relief that was filed on October 21, 2014 [Dkt. No. 42] (the "Sale Motion").[1]

Based on (i) the Sale Motion and all schedules and exhibits thereto; (ii) the arguments and statements of counsel concerning entry of this Order (the "Sale Order"); (iii) the evidence proffered or adduced at the hearing regarding the Sale Procedures (the "Sale Procedures Hearing") and at the hearing (the "Sale Hearing") regarding the sale (the

---

[1] Capitalized terms used but not defined herein have the meaning ascribed to them in the Sale Motion unless the context requires otherwise.

"Sale") or in support of the Sale Motion; and (iv) all the files, records and proceedings in this bankruptcy case, the Court being advised in the premises, and for those reasons stated and recorded in open court following the close of evidence:

**THE COURT HEREBY FINDS**:[2]

A.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 1070-1 and this matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (N). The statutory predicates for the relief requested in the Sale Motion are section 105 and 363 of the Bankruptcy Code.

B.    The Sale Procedures Hearing was held by this Court on October 29, 2014 and October 31, 2014. On November 3, 2014, the Court entered the Order (I) Approving (A) Sale and Auction Procedures, (B) Bidding Protections for Stalking-Horse Bidder, and (C) Form and Manner of Notice; (II) Scheduling Further Hearing; and (III) Granting Related Relief [Dkt. No. 52] (the "Sale Procedures Order").

C.    Pursuant to the Sale Procedures Order, this Court approved sale procedures attached to the Sale Procedures Order as Exhibit A (the "Sale Procedures").

D.    Pursuant to the Sale Procedures, the Debtor timely received 9 bid packages containing Qualified Bids prior to the Auction (inclusive of Deerwood Bank, the "Stalking-Horse Bidder").

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

2

E.      Pursuant to the Sale Procedures, the Debtor, in consultation with its financial advisor, Carl Marks Securities LLC ("Carl Marks"), conducted an auction (the "Auction") on December 10, 2014.

F.      The Debtor, in consultation with Carl Marks, and, in the case of the ACS Assets (as defined below), the Bank, determined that (i) the highest and best bid consists of (A) the bid submitted by Deerwood Bank (the "Bank Buyer") for the assets (the "Bank Assets") identified in the stock purchase agreement submitted by the Bank Buyer in connection with the Auction (the "Bank Purchase Agreement"); and (B) the bid submitted by OSP, LLC (the "ACS Buyer") for the assets (the "ACS Assets") identified in the stock purchase agreement submitted by the ACS Buyer in connection with the Auction (the "ACS Purchase Agreement") and that (ii) the next highest and best bid (A) for the Bank Assets consists of the bid submitted by Premier Bank Minnesota (the "Back-Up Bank Bidder") as identified in the stock purchase agreement submitted by the Back-Up Bank Bidder in connection with the Auction (the "Back-Up Bank Bidder Agreement"); (B) for the ACS Assets consists of the bid submitted by David C. Reiling (the "Back-Up ACS Bidder") as identified in the stock purchase agreement submitted by the Back-Up ACS Bidder in connection with the Auction (the "Back-Up ACS Purchase Agreement"); and (C) for the Bank Assets including ACS consists of the bid submitted by University Financial Corp. who has agreed to serve as a back-up bidder (the "Back-Up Combined Bidder") as identified in the purchase agreement submitted by the Back-Up Combined Bidder.

G.  On October 21, 2014 the Debtor filed the Sale Motion and, based upon the certificates of service filed with the Court, adequate and sufficient notice of the Sale Motion, the Sale Procedures Hearing, the Auction, the Sale Hearing, the Sale and other transactions contemplated by the Sale Motion and the relief sought therein, including entry of this Sale Order, has been provided in compliance with Local Rules 2002-1, 2002-4, 6004-1, 9013-3 and the Sale Procedures Order.

H.  Reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested in the Sale Motion has been afforded to all interested persons (as defined in section 101(41) of the Bankruptcy Code) and entities (as defined in section 101(15) of the Bankruptcy Code), including without limitation: (i) all entities reasonably known to the Debtor or Carl Marks to have expressed an interest in a transaction with respect to the Debtor or the Sale; (ii) any entities known to have asserted any Lien, Claim and Encumbrance (as defined below) in or upon the Debtor's assets; (iii) all federal, state and local regulatory or taxing authorities which have a reasonably known interest in the relief requested by the Sale Motion, including the Federal Deposit Insurance Company, the Board of Governors of the Federal Reserve System and the Minnesota Department of Commerce, Division of Financial Institutions; (iv) the Office of the United States Trustee; (v) the Internal Revenue Service; (vii) all persons and entities that have requested notice in accordance with Bankruptcy Rule 2002; (viii) all other known creditors of the Debtor; and (ix) all shareholders of the Debtor.

DOCS-#4422087-v8

I. The Debtor has made an election to proceed with the Alternative Transaction set forth in and contemplated by the Bank Purchase Agreement.

J. The entry of the Sale Order and the relief granted herein was supported by Alesco Preferred Funding II, Ltd., Alesco Preferred Funding XV, Ltd. and Alesco Preferred Funding XVI, Ltd. and no party, including the United States Trustee and Hennepin Capital, LLC, objected to entry of the Sale Order prior to the Sale Hearing. University Financial Corporation filed a response which was overruled.

K. As demonstrated by the testimony or other evidence proffered or adduced at the Sale Hearing or in support of the Sale Motion: (i) the offers from the Bank Buyer and the ACS Buyer in the aggregate constitute the highest and best offers and as such are in the best interest of the Debtor's estate; (ii) the Debtor conducted the Auction in accordance with the Sale Procedures Order, and has otherwise complied with the Sale Procedures Order; (iii) the Auction afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer, and (iv) the Debtor and Bank Buyer did not engage in any conduct which would allow the transactions contemplated by the Bank Purchase Agreement to be set aside pursuant to section 363(n) of the Bankruptcy Code.

L. Approval of the Bank Purchase Agreement in accordance with this Sale Order and the Bank Purchase Agreement are in the best interests of the Debtor's estate, creditors and other parties-in-interest. The terms of the Bank Purchase Agreement have been negotiated at arm's-length and are fair and reasonable.

DOCS-#4422087-v8

M. The Debtor has demonstrated compelling circumstances and good, sufficient and sound business purposes for the Sale pursuant to section 363(b) of the Bankruptcy Code.

N. Upon entry of this Sale Order, the Debtor has full corporate power to execute, deliver and perform its obligations under the Bank Purchase Agreement and all other documents contemplated thereby or entered into in connection therewith.

O. The Debtor is authorized and empowered to sell and transfer the Bank Assets free and clear of all Liens, Claims and Encumbrances (as defined below) as provided in this order because it has satisfied the requirements of section 363(f) of the Bankruptcy Code as stated immediately below.

P. The identified holder of Liens, Claims and Encumbrances (as defined below) against the Debtor, its estate or in respect of any of the Bank Assets, Hennepin Capital, LLC, has consented to the relief requested in the Sale Motion pursuant to section 363(f)(2) of the Bankruptcy Code in accordance with the consent submitted to the Court in connection with the Sale Hearing and the price at which the Bank Assets are to be sold is greater than the aggregate value of all known Liens, Claims and Encumbrances (as defined below) on such property of the Debtor pursuant to section 363(f)(3) of the Bankruptcy Code, and the holders of any other such claims will have their Liens, Claims and Encumbrances (as defined below), if any, in each instance against the Debtor, its estate or in respect of any of the Bank Assets, attach to the proceeds of the Bank Assets in the same order of priority, with the same validity, force and effect that such Liens, Claims and Encumbrances (as defined below) had prior to

such sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto.

Q. The Bank Buyer would not have entered into the Bank Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate and its creditors, if the sale of the Bank Assets to the Bank Buyer as set forth in the Bank Purchase Agreement were not free and clear of all Liens, Claims and Encumbrances (as defined below).

R. Effective as of the closing of the transactions contemplated in the Bank Purchase Agreement (the "Bank Closing"), and subject to the required approval or consent of any regulatory authority and third-party as may be required, the transfer of the Bank Assets is or will (i) constitute a legal, valid and effective transfer of property of the Debtor's estate to the Bank Buyer, as more particularly set forth in the Bank Purchase Agreement, and (ii) vest the Bank Buyer with all right, title, and interest of the Debtor and the Debtor's estate in and to the Bank Assets free and clear of all Liens, Claims and Encumbrances (as defined below) under sections 105 and 363(f) of the Bankruptcy Code.

S. To the extent expressly provided in this Sale Order in the terms below, and except as provided for in the Bank Purchase Agreement, the Bank Buyer and its affiliates shall have no obligations with respect to the liabilities of the Debtor.

**IT IS ORDERED:**

**General Provisions**

1. The Sale Motion is hereby granted to the extent provided herein.

2. All responses or objections to the Sale Motion or the relief requested therein that have not been withdrawn, resolved, waived, or settled, are overruled.

3. Notice of the Sale and the Sale Hearing was fair and equitable under the circumstances.

### Approval of the Bank Purchase Agreement

4. The Bank Purchase Agreement and all other documents and agreements and transactions pursuant thereto are hereby approved.

5. The sale of the Bank Assets to the Bank Buyer pursuant to the Bank Purchase Agreement is hereby authorized under section 363 of the Bankruptcy Code and the entry of the Debtor into the Bank Purchase Agreement is hereby approved.

6. Notwithstanding the foregoing, to the extent the Debtor is required to pay the ACS Stalking-Horse Bidder Fee, such ACS Stalking-Horse Bidder Fee shall be paid to the Stalking-Horse Bidder exclusively from the proceeds of the sale of the ACS Assets or the Bank Assets, prior to the payment of any such proceeds to any of the Debtor's unsecured creditors or equity holders. Except to the extent this order authorizes the payment of the ACS Stalking Horse Bidder Fee from the proceeds of the sale of the ACS Assets as a necessary cost of preserving the Debtor's estate, nothing in this order shall be deemed to constitute authorization by this court of the sale of the ACS Assets.

7. The Debtor is authorized to execute and deliver, and empowered to fully perform under, consummate, implement and close the Bank Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement such agreements and to take all further actions as

may be reasonably requested by the Bank Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Bank Buyer, or reducing to possession, any or all of the Bank Assets, or as may be necessary or appropriate to the performance of the obligations of the Debtor under the Bank Purchase Agreement, including effectuating amendments to the Bank Purchase Agreement in furtherance thereof, which amendments are subject to the provisions below.

8.     Neither the Debtor nor the Bank Buyer shall have any obligation to proceed with the Bank Closing until all conditions precedent in the Bank Purchase Agreement to its obligation to do so have been met, satisfied, or waived in accordance with the terms of the Bank Purchase Agreement.

### Transfer of the Bank Assets

9.     Pursuant to sections 105 and 363 of the Bankruptcy Code, and subject to the required approval or consent of any regulatory authority and third-party, if any, the Bank Assets shall be transferred to the Bank Buyer in accordance with the terms of the Bank Purchase Agreement and such transfer shall constitute a legal, valid, binding, and effective transfer of the Debtor's interest in such Bank Assets and shall vest the Bank Buyer with the Debtor's title to the Bank Assets, free and clear of all liens, claims and encumbrances, including but not limited to, Claims (as defined in section 101(5) of the Bankruptcy Code) of creditors (as defined in section 101(10) of the Bankruptcy Code) and equity security holders (as defined in Section 101(17) of the Bankruptcy Code), security interests, pledges, financing statements, personal injury and other tort claims, covenants, defects, hypothecations, charges, indentures, loan agreements, promissory

9

notes, instruments, leases, licenses, conditional sale or other title retention agreements, options, contracts, offsets, recoupment, rights of recovery, judgments, orders, and decrees of any court or governmental entity, interests, successor, transferee, products liability, environmental, tax and other liabilities, obligations and claims of any kind or nature arising prior to the Bank Closing Date (as defined below), and whether imposed by agreement, understanding, law, equity or otherwise (the foregoing collectively referred to herein as "Liens, Claims and Encumbrances"), with all such Liens, Claims and Encumbrances attaching to the proceeds of the Bank Assets in the same order of priority, with the same validity, force and effect that such Liens, Claims and Encumbrances now have or had prior to such sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto and to be satisfied from the proceeds of the Bank Assets or the Debtor's estate.

10. Except as otherwise provided in the Bank Purchase Agreement, all persons and entities (including, but not limited to, the Debtor, creditors, equityholders, including, without limitation, employees, former employees and shareholders, members, administrative agencies, governmental departments, secretaries of state, federal, state and local officials) and their respective successors or assigns and any trustees thereof, shall be and are hereby permanently and forever barred, restrained and enjoined from commencing or continuing in any manner any action or other proceeding of any kind against the Bank Assets or the Bank Buyer and its successors or assigns as an alleged successor or otherwise with respect to any Liens, Claims and Encumbrances of any kind and nature with respect to the Bank Assets or the operations of the Debtor

arising prior to the date of the Bank Closing (the "Bank Closing Date") with all such Liens, Claims and Encumbrances attaching to the proceeds of the Bank Assets in the same order of priority, with the same validity, force and effect that such Liens, Claims and Encumbrances now have or had prior to such sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto and to be satisfied from the proceeds of the Bank Assets or the Debtor's estate.

11.    The transfer of the Bank Assets pursuant to this Sale Order shall not, except as otherwise expressly set forth herein or under the Bank Purchase Agreement with respect to Cure Costs, if any, that may be applicable upon an election by Bank Buyer to have the Debtor assume and assign executory contracts, subject the Bank Buyer to any liability with respect to any obligations incurred in connection with or in any way related to the Bank Assets prior to the Bank Closing Date or by reason of such transfer under any applicable laws, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable subordination or successor or transferee liability.

12.    The sole and exclusive right and remedy available to any person who asserts any Lien, Claim and Encumbrance in any way related to the Bank Assets and incurred or otherwise arising prior to the date of Bank Closing shall be a right to assert such Lien, Claim and Encumbrance against the Debtor's estate, including the proceeds from the Bank Assets.

**Additional Provisions**

13. The transactions contemplated by the Bank Purchase Agreement are undertaken by the Bank Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the Bank Buyer is a purchaser in good faith of the Bank Assets and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

14. The consideration provided by the Bank Buyer for the Bank Assets under the Bank Purchase Agreement is fair and reasonable.

15. Hennepin Capital, LLC, and any other holder of a Lien, Claim and Encumbrance in, against, or upon the Bank Assets, is hereby authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release such holder's Liens, Claims and Encumbrances in, against, or upon the Bank Assets, if any.  If any person or entity that has filed financing statements or other documents or agreements evidencing any purported Liens, Claims and Encumbrances in, against or upon the Bank Assets has not executed termination statements, instruments of satisfaction, or releases, in form and substance reasonably satisfactory to the Buyer, of all Liens, Claims and Encumbrances that such person or entity purports to have with respect to the Bank Assets prior to the Closing Date, then on the Bank Closing Date, or as soon as possible thereafter, (a) the Debtor and the Bank Buyer are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Bank Assets, and (b) the Bank Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute

DOCS-#4422087-v8

conclusive evidence of the release of all Liens, Claims and Encumbrances in, against, or upon the Bank Assets of any kind or nature whatsoever.

16. All persons or entities that are presently, or on the Bank Closing Date may be, in possession of some or all of the Bank Assets, including certificates evidencing the Bank Shares, are hereby directed to surrender possession of the Bank Assets to the Bank Buyer or its designee on the Closing Date, or as otherwise directed by the Bank Buyer, with the Liens, Claims and Encumbrances of such person or entity attaching to the proceeds of the Bank Assets in the same order of priority, with the same validity, force and effect that such Liens, Claims and Encumbrances had prior to such sale, subject to any claims and defenses the Debtor and its estate may possess with respect thereto and to be satisfied from the proceeds of the Bank Assets or the Debtor's estate.

17. The Bank Buyer shall not be liable for any liability or other obligation of the Debtor or the estate arising under or related to the Bank Assets or other assets, operations, activities or business of Debtor or its affiliates prior to the Bank Closing Date. Without limiting the generality of the foregoing, the Bank Buyer shall not be liable for any Liens, Claims and Encumbrances, including under any theory of successor or vicarious liability, of any kind or character whether known or unknown as of the Bank Closing Date, whether fixed or contingent, with respect to the Debtor, its estate or affiliates, or any obligations of the Debtor or its estate arising prior to the Bank Closing Date, including but not limited to, liabilities arising, accruing, or payable under, out of, in connection with, or in any way relating to the Bank Assets or the other assets,

operations, activities, or business of the Debtor or its affiliates arising prior to the Bank Closing Date.

18. This Sale Order (a) is and shall be effective as a determination that, at the Bank Closing, all Liens, Claims and Encumbrances existing as to the Bank Assets prior to the Bank Closing Date have been and hereby are unconditionally released, discharged and terminated as to the Bank Assets, (b) is and shall be effective to cause all Liens, Claims and Encumbrances to attach to and be perfected in the proceeds of the sale of the Bank Assets, in the order of their priority, with the same validity, force and effect which they now have as against the Bank Assets, without the need to retain possession or control in order to maintain perfection or the need to file any financing statements or other evidence of perfection, and (c) is and shall be binding upon and govern the acts of all persons or entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Bank Assets.

19. This Court retains jurisdiction to (i) enforce and implement the terms and provisions of the Bank Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (ii) compel delivery of the Bank Assets to the Bank Buyer, (iii) resolve any disputes arising

14

under or related to the Bank Purchase Agreement and related agreements, except as otherwise provided therein, (iv) enjoin and adjudicate the assertion of any Lien, Claim and Encumbrance against the Bank Buyer or in respect of the Bank Assets, and (v) interpret, implement and enforce the provisions of this Sale Order.

20. Nothing contained (i) in any plan of reorganization (or liquidation) confirmed in this Chapter 11 Case, (ii) the order of confirmation confirming any plan of reorganization (or liquidation), (iii) any order dismissing this Chapter 11 case or converting it to a Chapter 7 case, or (iv) any order appointing an examiner or trustee in this Chapter 11 Case shall conflict with or derogate from the provisions of the Bank Purchase Agreement or the terms of this Sale Order.

21. The terms and provisions of the Bank Purchase Agreement, together with the terms and provisions of this Sale Order, shall be binding in all respects upon, and inure to the benefit of, the Bank Buyer, the Debtor, the Debtor's estate, any of Debtor's subsidiaries and affiliates, successors and assigns, the Debtor's creditors and equityholders and other third parties, including, but not limited to persons asserting Liens, Claims and Encumbrances in respect of the Debtor's estate or any of the Bank Assets. If a trustee or examiner is subsequently appointed in this Chapter 11 case, such trustee or examiner shall likewise be bound, in all respects, to the terms and provisions of this Sale Order.

22. The Bank Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any

such modification, amendment or supplement is either not material or is not less favorable to the Debtor or its estate in any material respect.  In the event a modification is material or less favorable to the Debtor or its estate in any material respect, the Debtor shall file and serve a notice of such modification.  If no party-in-interest files a written objection with the Court within five (5) business days, the modification shall be deemed approved without further order of the Court, but the Court may enter any such further order if necessary or as may be appropriate.

23. Subject to and upon the Bank Closing with the Bank Buyer and the Bank's closing of the sale of the ACS Assets with the ACS Buyer, the Debtor is and shall be authorized and empowered to pay to the Stalking-Horse Bidder, as an actual and necessary cost of preserving the Debtor's estate within the meaning of section 503(b) and section 507 of the Bankruptcy Code, the ACS Stalking-Horse Bidder Fee from the proceeds of such sale(s) , which is hereby approved.

24. The provisions of this Sale Order are non-severable and mutually dependent without written consent of the Bank Buyer.

25. The Court finds that there is no just reason for the delay in the implementation of this Sale Order.  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the effectiveness of this Sale Order shall not be stayed for 14 days after entry on the docket and, instead, this Sale Order shall be effective and enforceable immediately upon entry.

26. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Sale Motion in this Chapter 11 case, or the Bank Purchase Agreement, the terms of this Sale Order shall govern.

Dated: December 23, 2014                  /e/ Katherine A. Constantine
Katherine A. Constantine
United States Bankruptcy Judge

NOTICE OF ELECTRONIC ENTRY AND FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *12/23/2014*
Lori Vosejpka, Clerk, By jhn, Deputy Clerk